The third case for argument today is Uebelacker v. Rock Energy Cooperative. Ms. Lewis. Good morning, Your Honors. May it please the Court, my name is Julie Lewis. I represent the plaintiff in this matter, Barbara Uebelacker. Your Honors, this is a Rule 56 case. Did the defendants resolve every disputed material fact to merit judgment in their favor? The answer is no. And the reason is that the defendants and the District Court are focusing on wrongful viewing under the Stored Communications Act, but in fact the Stored Communications Act has two parts, not one. That wrongful viewing aspect is the first part. The second part is actually accessing a facility and obtaining access to the electronic communication while it's in storage. The defendants do not address that aspect of the statute, and I would argue that the District Court did not spend time on that aspect of the statute either. The District Court's analysis and opinion notes that Uebelacker contends Rock Energy violated the Stored Communications Act by accessing Angie Schumann's Facebook Messenger conversation with Uebelacker. That's only the first half of the statute. The second half of the statute is that the defendants obtained access to the electronic communication while it was in storage. Therefore, what was reasonable for the plaintiff with respect to filing her Stored Communications Act was to understand the facts underlying both aspects of the Stored Communications Act, both the first element and the second element. The plaintiff... You don't dispute that inquiry notice is the correct accrual rule here, do you? No, we don't, Your Honor. So under either theory, she saw in January the Facebook posting where she was engaged in communication. Why wouldn't that have put her on notice to do more? She doesn't have to know all the facts. That's not what inquiry notice says. It's would a reasonable person have known that she should have done more. And what we're arguing here, Your Honor, is that in a wrongful viewing case, in an invasion of privacy case, that would be a correct assumption by both the court and the defendants. However, in this case, the actual violation is the violation of the Stored Communications Act, and she did not have enough facts to... for two reasons. One is she did not have enough... So your argument is that the Facebook posting could have been stored on the computer? Our argument and the complaint itself, what she's alleging, is that the defendants violated the Stored Communications Act by signing into her co-worker's computer as the co-worker, accessing the Facebook server without the plaintiff's authorization, and accessing the plaintiff's messenger conversation while it was in storage. That's our complaint. That's our case. However, the defendants... So why when... she didn't know all the facts, but when she saw that they had a Facebook posting of hers, why doesn't that put her on notice of the possibility that this could have happened? Potentially it does. From a legal standpoint, our argument is that she would not know that they accessed the Facebook communication while... It doesn't matter if she knew it or not. It's would a reasonable person have put on notice that it might have happened, that she should look into it. From a screen print, Your Honor, we don't believe it's reasonable for her to have known that they accessed the Facebook server, but also I would say secondly, it was not reasonable for her because she was under threat of termination. She was terminated that day. Do you have any law that supports that essential tolling argument? No. No. We're asking the court to recognize that today, that in a subjective, individualized analysis of what was reasonable for this particular plaintiff, looking at the Petty decision in Western District of Kentucky, as well as the Fuchisawa, this court's Fuchisawa decision, what is reasonable? But Petty's different because Petty, there was, the issue was there was an underlying dispute as to whether or not they had received the communication in the first place. Here there's no dispute that your client in January of 2019 saw these postings. What she saw were paper copies of a screen print, however... Of the Facebook screen print with the communication. Correct. That's correct, Your Honor. In Petty as well, she saw the cell phone records. She got the subpoena with the attached document. But there was the dispute there was whether or not she had received the underlying screenshot. There was a dispute of fact there that doesn't exist here. Your Honor, I would, we would argue that there are actually four material disputed facts in this case that were noted actually in the defendant's brief on page six, that Larson had obtained access without her authorization. The defendants do not establish access to what exactly. It is, that phrase is submitted to the court as some kind of fact that allows an assumption that she would have known that the Stored Communications Act was violated. Again, she doesn't have to know. It's put on inquiry notice. Yes. But what, but what inquiry about what? Inquiry that someone looked at her, her private message? Yes, she knew that. She absolutely knew that from seeing those screen prints. Inquiry about whether the defendants accessed her Facebook message on the Facebook server while it was in storage? No, there isn't a way she could do that. She wouldn't have known that at that time and she wasn't able, it wasn't reasonable for her to investigate it at that time. I will note two, three other material issues of fact that the defendants note in their with a copy of the conversation found on Angie's computer and explained how we came about it. We absolutely have disputed that throughout the record that the, and we do today. How the plaintiff, how the defendants came about that Facebook message, we have, we had no idea then. The plaintiff testified to that in her deposition and that is a disputed fact that has not been resolved in the defendant's favor. Was she under threat of termination? The defendant's brief on page 10 completely disputes that. That is a very genuine disputed fact here that should be resolved in the plaintiff's favor. She has testified. But it has to be a material fact. And how, if you're asking us to create new law and say it should be told because she was under threat of termination, but if we decline to extend the law to that, what's the materiality of whether or not she was under the threat of termination? And Your Honor, I would argue that we're actually not asking the court to extend the law as much as to create a new tolling rule or conduct using the de novo standard an analysis of whether, in an individualized, subjective way, it was reasonable for this plaintiff in her situation to have done an investigation with respect to this law, the Stored Communications Act. Was it reasonable at the time in our, it doesn't require new law in our view. There isn't a case that says this particular situation is reasonable. It sounds like new law. Okay. Well, we'll take new law, but be that as it may, it is a subjective analysis and we would ask the court to. Ms. Lewis, are you asking us to adopt some sort of equitable estoppels here? I beg your pardon, Your Honor. Are you seeking to some sort of have us adopt an equitable estoppel? No, Your Honor. We have not made that argument in this case. We feel that the duty of inquiry with respect to whether it was reasonable would adequately cover the situation. Finally, Your Honor, under, under Fujisawa, this court's decision, how easy was it to obtain the necessary proof for a diligent investigation, Fujisawa really could cover this situation we believe without having to create new law and I will reserve my last minute for rebuttal. Thank you. Certainly, Ms. Lewis. Mr. Myers. Thank you. Please, the court. My name is Ray Myers. I represent the Defendants Rock Energy Cooperative and Shane Larson, the CEO of the company. I think the court has, in the questions of counsel, has focused on what is really, really going on here is that the plaintiff wishes to establish a new rule that, that the inquiry notice be extended beyond anything that is reasonable. Judge Connolly addressed that specifically in his opinion and I won't take time repeating that. But the, the question presented to Judge Connolly and is supported by the plaintiff in this action is what, what was reasonable for Ms. Ubalacher to do given the fact that she was the plaintiff actually given the opportunity to know what message was intercepted. In this case, yes, the cooperative did certainly, did have access to the Facebook message that was a private message. That was the question whether that violates the, the Stored Communication Act is the, was the main issue presented to this court. And there's no dispute that this message was presented to her more than two years before she brought this action in the, in the district court here. It's important to, to note that this action that she did bring was part of a larger piece. She really was bringing an employment action. She was, she originally filed for the EEOC for age discrimination, got her, that case was closed, got her letter of invite to the, to the district court, which she then used and then tacked on the Shared Communications Act, or excuse me, Stored Communications Act and a person, and a Wisconsin cause of action for invasion of privacy. She knew from the beginning what had happened. She did not know the actual keystrokes that the, the cooperative used in, in obtaining the, the message. And we did argue, as, as counsel noted in the, before Judge Connolly and in the appeal briefs here, that there were other, that what she learned after the two years had expired or shortly thereafter doesn't prove a violation of the Stored Communications Act. And whether or not there's actual storage involved in the, in the method in which the cooperative obtained this, this, this message. But that's irrelevant to the statute of limitations question here. Judge Connolly didn't focus on the, on the other arguments about why the Stored Communications Act really doesn't apply to this. But Ms. Ubelacher did have notice of, that this message had been intercepted. And she knew it had, she knew where it came from. It came from this, from the Schumacher computer, the other, the other employee she was in conversation with. And in the appendix that the plaintiff attached to this appeal, in the deposition testimony, she admitted that she understood at the time of this January meeting, more than two years before she brought the action, that, that she, she's to say on page 38 in the appendix there. So you understood that at that point, at least, or your assumption at that point was that she had logged, that he, the cooperative had logged into her account, not yours. Correct? Correct. Because it was on Angie's computer. Angie could have logged into my account from Angie's computer, or excuse me, Angie couldn't have logged into my account from Angie's computer because I had never logged into my account from Angie's computer. She had basic facts in, in, and she had an obligation under the statute, which is at risk here of the Stored Communications Act, to make a reasonable inquiry. However, she relies on, she relies on two cases to, to support that. The Petty case, which was, you know, was a Stored Communications Act, but as the court noted, that was not, at that, the issue there was whether there was an issue of fact about whether the employee had actual, the actual message. So Petty, Petty doesn't advance her case here. She also looks at the Fujiwara, Fujiwasa case, which is the, from, from this court, which specifically answers the question. And the, the, on page 13, the court specifically said, the plaintiff will not be heard to, to use the ostrich defense here, which is what the, the, the court called it. It says, if the plaintiff is delaying bringing this action for her personal benefit, and she specifically alleges she's, was afraid that she was going to be fired, that she wanted continued employment until she believed that that was going to end, and then she, she wants to, this court to adopt the argument that at that point, her, the statute of limitation kicks in, so that she can control what she wants this court to do is to establish a new that she, she is arguing that she didn't have an obligation to make inquiry until it was no longer convenient for her to do so. In this case, it was convenient for her because she worked for 18 months, or 16 months after this message was put out. She, and only when she believed that she was about to be terminated did she ask for an inquiry for further information. So, yes, this was available to her, and as the plaintiff has acknowledged, there isn't any case law that supports her argument that she can wait. And, in fact, the one case that they, that she cites at Fujiwasa specifically distinguishes waiting for your personal benefit because that, again, puts the plaintiff in, in control of what's going on. So, this case is, was ripe for summary judgment because there wasn't an issue about whether she had reasonable knowledge. She had actual knowledge of the message. She had actual knowledge where it came from. She didn't have every keystroke that was used, but that she made, and again, in the appendix submitted by the plaintiff is the memo she drafted asking for an investigation when she thought she was going to be terminated. And at that point, you know, it was too late for her to, she had delayed the 18 months already, but even so, she didn't bring this action until more than two years had expired. And unless the court has any further questions, I'm finished. Thank you, Mr. Myers. Anything further, Ms. Lewis? Thank you, Your Honors. Just very briefly, I would like to compare and contrast the Petty case and the Davis case. Davis is the case that the district court relied on mainly to, in its judgment and opinion, and the court specifically points out the standard of something was afoot. Something was afoot means that reasonable notice inquiry has been activated in a particular case. Something was afoot is from the Davis case, that terminology, but the district court seemed to focus on that. In our view, Your Honors, something was afoot is a subjective standard that must be measured based on each individual situation. It is not a hard and fast rule that can be applied to every situation without viewing the plaintiff's personal circumstance. When you contrast that with... Thank you, Ms. Lewis. You're welcome. Thank you, Your Honor. The case is taken under advisement.